JOSEPH H. HUNT
Assistant Attorney General
ALEX G. TSE
United States Attorney
JOHN R. TYLER
Assistant Director
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel
Department of Justice, Civil Division
318 South Sixth Street, Room 244
Springfield, Illinois 62701
Telephone: (202) 514-3495
Facsimile: (217) 492-4888
E-mail: scott.simpson@usdoj.gov
COUNSEL FOR DEFENDANTS
*(See signature page for parties represented.)*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CITY AND COUNTY OF SAN FRANCISCO,

Plaintiff,

v.

MATTHEW G. WHITAKER, Acting Attorney General of the United States, *et al.*,

Defendants.

**OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OR PARTIAL SUMMARY JUDGMENT**

Date: February 13, 2019
Time: 2:00 p.m.

No. 3:18-cv-05146-WHO

STATE OF CALIFORNIA, *ex rel.* XAVIER BECERRA, Attorney General of the State of California,

Plaintiff,

v.

MATTHEW G. WHITAKER, Acting Attorney General of the United States, *et al.*,

Defendants.

No. 3:18-cv-05169-WHO

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. The Public-Disclosure Condition and the Requirement to Provide Information about Laws and Policies in a Byrne JAG Application Are Constitutionally Permissible ........ 2

A. These Requirements Are Authorized by Statute and Do Not Violate the Separation of Powers ........ 2

B. These Requirements Are Consistent with the Spending Clause ........ 5

1. The Requirements Are Related to the Purposes of the Byrne JAG Program ........ 6

2. The Requirements Are Unambiguous ........ 7

II. The Public-Disclosure Condition and the Requirement to Provide Information about Laws and Policies in a Byrne JAG Application Are Consistent with the Administrative Procedure Act ........ 9

III. California's Tenth Amendment Claim Misconstrues the FY 2018 Custody and Interview Conditions ........ 10

IV. Any Injunction Should be Limited to the Plaintiffs ........ 11

CONCLUSION ........ 12

## TABLE OF AUTHORITIES

### CASES

*Altamirano v. Gonzales*, 427 F.3d 586 (9th Cir. 2005) .... 7

*Benning v. Georgia*, 391 F.3d 1299 (11th Cir. 2004) .... 8

*Bogues v. United States*, 703 F. Supp. 2d 318 (S.D.N.Y. 2010) .... 4

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) .... 12

*California v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018) .... 7

*Charles v. Verhagen*, 348 F.3d 601 (7th Cir. 2003) .... 8

*City & Cty. of San Francisco v. Trump*, 897 F.3d 1225 (9th Cir. 2018) .... 12

*City of Chicago v. Sessions*, 264 F. Supp. 3d 933 (N.D. Ill. 2017) .... 12

*City of Chicago v. Sessions*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018) .... 12

*Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382 (3d Cir. 2006) .... 6

*Eringer v. Principality of Monaco*, No. CV 10-1803 GAF (EX), 2011 WL 13134271 (C.D. Cal. Aug. 23, 2011), 533 F. App'x 703 (9th Cir. 2013) .... 3

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) .... 10

*Garcia v. United States*, 469 U.S. 70 (1984) .... 5

*Holder v. Hall*, 512 U.S. 874 (1994) .... 5

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) .... 1, 6, 8

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018) .... 11

*New York v. United States*, 505 U.S. 144 (1992) .... 1, 6

*Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181 (9th Cir. 2010) .... 1, 10

*South Dakota v. Dole*, 483 U.S. 203 (1987) .... 6, 9

*United States v. Flores-Garcia*, 198 F.3d 1119 (9th Cir. 2000) .... 7

*Van Wyhe v. Reisch*, 581 F.3d 639 (8th Cir. 2009) .... 8

**STATUTES**

5 U.S.C. § 552(b)(7) ........ 2

8 U.S.C. § 1324 ........ 5

8 U.S.C. § 1226 ........ 10

8 U.S.C. § 1226(c) ........ 6

8 U.S.C. § 1228(a) ........ 6

8 U.S.C. § 1231 ........ 10

8 U.S.C. § 1231(a)(6) ........ 6

8 U.S.C. § 1357 ........ 10

8 U.S.C. § 1366 ........ 10

8 U.S.C. § 1378 ........ 6

26 U.S.C. § 5853(c) ........ 4

34 U.S.C. § 10102(a)(2) ........ 1, 2

34 U.S.C. § 10102(a)(6) ........ 2, 4

34 U.S.C. § 10153(a) ........ 2, 3

34 U.S.C. § 10154 ........ 4

Pub. L. No. 90-351, 82 Stat. 197 (1968) ........ 3

Cal. Bus. & Prof. Code § 16801 ........ 8

Cal. Gov't Code § 6254(f) ........ 2

Cal. Health & Safety Code § 1367.02(b) ........ 8

Cal. Lab. Code § 90.2(a) ........ 10

Cal. Penal Code § 32 ........ 8

**REGULATIONS**

27 C.F.R. § 479.90 .................................................................................................... 4

**OTHER AUTHORITIES**

H.R. Rep. No. 109-233 (2005) ........................................................................................ 4

## INTRODUCTION

This case asks whether the Department of Justice can require recipients of certain federal law enforcement funds (1) to refrain from disclosing federal law enforcement information in order to advance continued violations of federal law, and (2) to identify any laws or policies that may affect the recipients' ability to communicate with certain federal law enforcement authorities. Plaintiffs ignore or discount the statutes and standards that govern their challenges to these requirements. Plaintiffs discount Congress's mandate for the Assistant Attorney General of the Office of Justice Programs ("OJP") to "maintain liaison" among various levels of government "in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), arguing that that authority makes the AAG only a messenger. Plaintiffs also ignore both the Supreme Court's instruction that the "relatedness" aspect of the Spending Clause requires only "some relationship" between spending conditions and the purposes of the program involved, *New York v. United States*, 505 U.S. 144, 167 (1992), and the Ninth Circuit's observation that this "low-threshold" inquiry is "a far cry from imposing an exacting standard," *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002). Similarly, California ignores the Court of Appeals' holding that the "arbitrary and capricious" standard under the Administrative Procedure Act ("APA") is "highly deferential" to the agency. *See Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010).

Under the statutes and standards that govern here, plaintiffs' challenges to the two subject requirements in the FY 2018 Byrne JAG Program should be dismissed, or summary judgment should be entered for the defendants.[1] The AAG's authority to "maintain liaison" (along with his other statutory authorities) requires him to facilitate a close bond of cooperation between federal law enforcement and state and local law enforcement, supporting both the public-disclosure condition and the requirement to identify certain of the applicant's laws and policies. These

---

[1] As noted in their opening memorandum, defendants recognize that this Court has previously ruled against certain FY 2017 Byrne JAG conditions that are similar to the interview, custody, and information conditions in the FY 2018 Byrne JAG Program. Defendants also recognize that the Court has ruled against the constitutionality of 8 U.S.C. § 1373. Defendants rest on their prior arguments regarding those issues, *see San Francisco v. Sessions*, No. 3:17-cv-04642-WHO, Dkt. Nos. 113, 134; *California v. Sessions*, No. 3:17-cv-04701-WHO, Dkt. Nos. 124, 131, and will not address plaintiffs' arguments on those issues here.

requirements, moreover, bear more than "some relationship" to the purposes of the Byrne JAG Program, as the subject requirements and the Program seek to further criminal justice and public safety. And these requirements are more than reasonable under the APA, especially given the demonstrated need to protect federal law enforcement information in order to safeguard federal officers, the suspects they encounter, and the general public.

## ARGUMENT

### I. The Public-Disclosure Condition and the Requirement to Provide Information about Laws and Policies in a Byrne JAG Application Are Constitutionally Permissible

#### A. These Requirements Are Authorized by Statute and Do Not Violate the Separation of Powers

Congress authorized the Assistant Attorney General ("AAG") for OJP to "maintain liaison with . . . State governments in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), to dictate the "form" of Byrne JAG applications, *id.* § 10153(a), to place "special conditions on all grants" and determine "priority purposes for formula grants," *id.* § 10102(a)(6), and to require compliance with all "applicable Federal laws" in connection with Byrne JAG awards, *id.* § 10153(a)(5)(D). These authorities are ample to support the public-disclosure condition and the requirement to provide information about the applicant's laws and policies in a Byrne JAG application.

These requirements enable federal, state, and local law enforcement officials to work together effectively and safely, such that they readily fall within the AAG's authority to "maintain liaison." *Id.* § 10102(a)(2). Operational security – the confidentiality of law enforcement operations – is essential to such operations. Thus, for example, both the federal Freedom of Information Act and the California Public Records Act protect the confidentiality of operational law enforcement information. *See* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes" to the extent disclosure "could reasonably be expected to interfere with enforcement proceedings" or "disclose techniques and procedures for law enforcement investigations or prosecutions"); Cal. Gov't Code § 6254(f) (exempting records of "investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney

General and the Department of Justice . . . and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for . . . law enforcement . . . purposes").

In arguing to the contrary, California asserts that this authority encompasses only "maintain[ing] voluntary bilateral communications." CA Mem. at 16. One who "maintains liaison," however, is much more than a mere messenger. A liaison is defined as "a close bond or connection" or "a person who establishes and maintains communication for mutual understanding and cooperation." *See* Liaison, Merriam-Webster, https://www.merriam-webster.com/ dictionary/ liaison (last visited Jan. 15, 2019). Thus, the AAG is responsible for maintaining "a close bound or connection" between federal and state criminal justice authorities and for facilitating "mutual understanding and cooperation" among such authorities. This clearly encompasses, at minimum, protecting the confidentiality of federal law enforcement information provided to state and local agencies and assessing the ability of such agencies to engage in law enforcement cooperation by gathering information about their laws and policies. *Cf. Eringer v. Principality of Monaco*, No. CV 10-1803 GAF (EX), 2011 WL 13134271, at *5 (C.D. Cal. Aug. 23, 2011) (stating that plaintiff's contract for "maintaining liaison" between the Principality and foreign intelligence agencies entailed "regularly shar[ing] sensitive intelligence information"), *aff'd*, 533 F. App'x 703 (9th Cir. 2013).[2]

The express statutory requirement to submit a Byrne JAG application "in such form as the Attorney General may require," 34 U.S.C. § 10153(a), further confirms OJP's authority to require applicants to include certain information about any laws or policies regarding communication with federal immigration authorities. San Francisco argues, in response, that this statute authorizes the AAG only to "make ministerial determinations about the 'structure' or 'configuration' of the Byrne JAG application" not to require applicants to provide "detailed information." SF Mem. at

---

[2] California quibbles over whether the Omnibus Crime Control and Safe Streets Act of 1968 created the Office of Justice Programs or the Office's predecessor, CA Mem. at 15, but the State cannot deny Congress's finding, in enacting that Act, that "law enforcement efforts must be better coordinated, intensified, and made more effective at all levels of government," Pub. L. No. 90-351, 82 Stat. 197 (1968), which is as true today as it was in 1968.

12. But the authority to dictate the "form" of an application necessarily encompasses the authority to "disapprove any application," 34 U.S.C. § 10154, that fails to comply with the required form. And that authority necessarily encompasses requiring that certain information be included in an application rather than only setting forth its "structure." *Cf. Bogues v. United States*, 703 F. Supp. 2d 318, 329 (S.D.N.Y. 2010) (authority to dictate "form" and "manner" of application encompasses authority to determine when a new application must be submitted to continue the status granted pursuant to earlier application). After all, the purpose of an application form is to collect information to determine whether to grant or deny the application; therefore, determining the "form" of an application necessarily includes deciding what information to seek. Indeed, many federal regulations enacted pursuant to an agency's authority to determine the "form" of an application set forth the information required in the application. *See, e.g.*, 26 U.S.C. § 5853(c) (authorizing Secretary of the Treasury to determine "form and manner" of application to exempt certain firearms transfers from tax); 27 C.F.R. § 479.90 (setting forth content of application for tax-exempt firearms transfer and procedure for claiming exemption).

Assuming any further authority were needed here, both the public-disclosure condition and the requirement to provide information about the applicant's laws and policies also fall within OJP's authority to place "special conditions on all grants" and to determine "priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). These are "special conditions," and they prioritize certain federal law enforcement funds for States and localities that protect the confidentiality of federal law enforcement information. San Francisco argues, citing this Court's holding in the prior cases, that Section 10102(a)(6) does not itself confer the authority described, but only refers to any such authority as may be conferred elsewhere. SF Mem. at 10-11. With respect, however, that argument ignores, among other things, the statement by the House Judiciary Committee that this language does indeed "allow[] the Assistant Attorney General to place special conditions on *all* grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005) (emphasis added). The Supreme Court has "repeatedly stated that [when resort to legislative

history is necessary] the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill [in question], which represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." *Garcia v. United States*, 469 U.S. 70, 76 (1984) (internal quotation marks omitted); *see Holder v. Hall*, 512 U.S. 874, 932 n.28 (1994) (Thomas, J., concurring). Plaintiffs cite this legislative history for other purposes, where it suits them, CA Mem. at 3, but they ignore the committee's straight-forward statement about the AAG's authority. If the committee report is good authority on some issues, it is also good authority on this issue.

Finally, California argues that most of the statutes cited in the FY 2018 Byrne JAG require-ments "do not apply to the State at all." CA Mem. at 13. But the public-disclosure condition and the requirement to provide information about laws and policies do not seek to require awardees to comply with the federal statutes cited therein. The public-disclosure condition does not seek, for example, to "apply" the federal smuggling statute, 8 U.S.C. § 1324, to the plaintiffs in the sense of prosecuting them thereunder. Rather, those statutes are cited as background for the grant requirements, to establish the Federal Government's legitimate interests in protecting federal law enforcement information and securing information about the laws and policies of law enforcement grantees.[3] Whether or not California and San Francisco can be prosecuted for violating a particular federal criminal law, the Department of Justice can legitimately expect them – as a condition of receiving federal law enforcement grant funds – to refrain from disclosing sensitive federal law enforcement information for the purpose of defeating the enforcement of federal law.

**B. These Requirements Are Consistent with the Spending Clause**

In relation to plaintiffs' claims under the Spending Clause, the public-disclosure condition and the requirement to provide information about the applicant's laws and policies in a Byrne JAG application are related to the criminal-justice and public-safety purposes of the Byrne JAG Program and are sufficiently clear to enable potential applicants to "exercise their choice knowingly,

[3] For the same reasons, California's Tenth Amendment challenge to the statutes cited in the FY 2018 requirements – Count Three of the State's First Amended Complaint – is without merit. *See infra* text at 10-11.

cognizant of the consequences of their participation." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987).

**1. The Requirements Are Related to the Purposes of the Byrne JAG Program**

Both of the plaintiffs ignore the governing standard for relatedness under the Spending Clause. The Supreme Court has held that the Constitution requires only "some relationship" between spending conditions and the purposes of the program involved, *New York v. United States*, 505 U.S. 144, 167 (1992), and the Court of Appeals has emphasized that this "low-threshold" inquiry is "a far cry from imposing an exacting standard," *Mayweathers v. Newland, 314 F.3d 1062*, 1067 (9th Cir. 2002). Plaintiffs also ignore the many ways in which criminal law is intertwined with immigration law. Among other things, the term "criminal alien" appears multiple times in the Immigration and Nationality Act ("INA"), *see, e.g.*, 8 U.S.C. §§ 1226(c), 1228(a), 1231(a)(6), 1378, and "[a] primary goal of several recent overhauls of the INA has been to ensure and expedite the removal of aliens convicted of serious crimes," *Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382, 391 (3d Cir. 2006). The requirements challenged here ensure that any "program or activity" funded by the Byrne JAG Program does not thwart the Federal Government's exercise of its ability to remove aliens not lawfully present in the United States or removable due to a criminal conviction – thus also serving the purposes of the Program.[4]

Contrary to San Francisco's argument, the relatedness inquiry does not ask "whether *immigration enforcement* is sufficiently related to criminal justice," SF Mem. at 13 (emphasis added), but whether *these particular requirements* are sufficiently related to the purposes of the Byrne JAG Program. Thus, this Court's prior holding regarding the relatedness of the FY 2017 conditions is not dispositive in relation to the FY 2018 requirements at issue here. *Contra id.* The relationship between criminal justice and the Byrne JAG requirements now at issue is even more apparent than the relationship between criminal justice and the FY 2017 conditions. For example,

---

[4] California argues that the removal of non-criminal aliens undercuts this relationship. CA Mem. at 20. But the State cannot deny the INA's heavy reliance on criminal law, and, in any event, the Department of Homeland Security memorandum cited by the plaintiff stated that DHS would continue to "prioritize" the removal of criminal aliens. CA Dkt. No. 29-2, Ex. H at 2.

the "federal law enforcement information" to be protected by the public-disclosure condition is defined as encompassing any "law enforcement sensitive information communicated or made available, by the federal government, to a State or local government entity," Defs' RJN, Ex. C at 15 (SF Dkt. No. 27-1), and thus is not limited to information regarding the enforcement of immigration law. Further, contrary to San Francisco's argument, SF Mem. at 14, the fact that the public-disclosure condition forecloses grantees from disclosing federal law enforcement information to conceal either unlawfully present aliens *or* fugitives from criminal justice further shows the requirement's relationship to the purposes of the Byrne JAG Program. This condition seeks to prevent federal grantees from using federal law enforcement information to defeat federal law enforcement, whether the targets of that enforcement are violating federal immigration law or federal criminal law.

Finally, California argues that the challenged requirements cannot be related to the purposes of the Byrne JAG Program because they apply to all unlawfully present aliens rather than only to "criminal aliens" – that is, aliens who are subject to criminal penalties. CA Mem. at 20. Criminal law imbues multiple aspects of the INA, however, and not merely in relation to criminal aliens. *See Altamirano v. Gonzales*, 427 F.3d 586, 594 (9th Cir. 2005) (referring to a criminal doctrine that INA "imports" into civil provision); *United States v. Flores-Garcia*, 198 F.3d 1119, 1122 (9th Cir. 2000) (noting that "background principles of criminal law" inform interpretation of INA); *see also California v. Sessions*, 284 F. Supp. 3d 1015, 1033 (N.D. Cal. 2018) (noting that "criminal law impacts the INA in a variety of ways" and that "the relationship the government needs to add conditions to the receipt of grants does not need to be close"). Thus, preventing the disclosure of federal law enforcement information to harbor unlawfully present aliens – regardless of the applicability of any criminal penalties – is necessarily related to the criminal-justice purposes of the Byrne JAG Program.

**2. The Requirements Are Unambiguous**

The challenged requirements also satisfy the governing standards on clarity under the Spending Clause. The courts hold that "the exact nature of [grant] conditions may be largely

indeterminate, provided that the existence of the conditions is clear, such that States have notice that compliance with the conditions is required." *Charles v. Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003) (citation omitted); *see Van Wyhe v. Reisch*, 581 F.3d 639, 650 (8th Cir. 2009) (finding notice requirement satisfied even where condition "provides a pliable standard"); *Mayweathers*, 314 F.3d at 1067 (finding notice requirement satisfied even with a "standard [that] is perhaps unpredictable because it has resulted in different determinations in different courts"). California argues that these cases are inapplicable because they involve whether a statute provides adequate notice of grant conditions, whereas the grant requirements here were imposed by an agency pursuant to statutory authority. CA Mem. at 19. The plaintiffs, however, have chosen to allege violation of the Spending Clause, and the viability of this claim must necessarily depend on the case law that governs Spending Clause claims.

In arguing that the challenged requirements are ambiguous, plaintiffs appear to require the Department of Justice to "specifically identify and proscribe in advance every conceivable . . . action that would be improper," which the Spending Clause does not require. *See Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004). These requirements are set forth at some length, with definitions and Rules of Construction as needed. Indeed, California's own laws use most of the operative terms in the public-disclosure condition. *See, e.g.*, Cal. Penal Code § 32 ("Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."); Cal. Health & Safety Code § 1367.02(b) ("The director shall not publicly disclose any information submitted pursuant to this section that is determined by the director to be confidential pursuant to state law."); Cal. Bus. & Prof. Code § 16801 ("Any person who attempts, directly or indirectly, to enforce any such rule, regulation, or by-law, is guilty of a misdemeanor and subject to the penalties prescribed in this chapter.").

Nevertheless, plaintiffs argue that the challenged requirements are unconstitutionally

ambiguous because they allegedly leave "many questions . . . open." SF Mem. at 15-16; *see* CA Mem. at 19. The "questions" cited by plaintiffs, however, are either not ambiguities at all or are too particular to constitute a constitutional violation, especially in light of California's own use of the same language. For example, San Francisco asks whether the public-disclosure condition encompasses "information that was generated by the federal government but is received from an independent source." SF Mem. at 15. But the Rules of Construction clearly define "federal law enforcement information" as "information communicated or made available, *by* the federal government, *to* a State or local government entity." Defs' RJN, Ex. C at 15 (emphasis added). Plaintiff contends that defendants' reference to a specific disclosure by the mayor of Oakland renders this definition unclear because the mayor allegedly "received [that] information from unofficial sources rather than through formal government channels," SF Mem. at 14 n.6, but the City cites no authority for that assertion, and, in any event, the information obviously originated with a federal source.

In any event, plaintiffs could ask OJP for clarification on the questions they pose. San Francisco argues that defendants' willingness to answer questions about the grant requirements cannot save them. SF Mem. at 16. But the question under the ambiguity element of the Spending Clause is whether applicants can "exercise their choice knowingly, cognizant of the consequences of their participation." *Dole*, 483 U.S. at 207. To the extent an applicant is uncertain about the meaning of a grant requirement, it can seek clarification from the federal agency, which would presumably be bound by any explanation it provides regarding the "consequences" of the requirement, allowing the applicant to act "knowingly."

## II. The Public-Disclosure Condition and the Requirement to Provide Information about Laws and Policies in a Byrne JAG Application Are Consistent with the Administrative Procedure Act

In relation to its claim under the Administrative Procedure Act, California fails to explain how the challenged grant requirements can be "arbitrary and capricious" under the APA if they are statutorily authorized and comport with the Spending Clause, as shown above. In any event, the public-disclosure condition and the requirement to provide information about the applicant's laws

and policies as part of a Byrne JAG application readily satisfy this "highly deferential" standard, *see Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010), especially in light of the actual disclosure of an impending federal law enforcement operation by an elected official in California. *See* Admin. Record at AR01038-39 (CA Dkt. No. 24). It is "entirely rational" for OJP to deny federal law enforcement funding to a jurisdiction that publicly discloses sensitive federal law enforcement information in an attempt to shield an alien or fugitive from detection or that refuses to provide information about its laws or policies on communicating with certain federal law enforcement authorities. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 517 (2009).

In response, California argues that defendants "provide no evidence that this one disclosure [by the mayor of Oakland] is indicative of a larger problem." CA Mem. at 22. But the APA does not require "evidence" of a "large problem" of unauthorized disclosures to establish the reasonableness of conditioning federal law enforcement funds on protecting federal law enforcement information. Even aside from the common-sense nature of such a requirement and the real-world experience of this disclosure, plaintiffs' laws and policies create a concern that state and local officials in California may engage in such disclosures in the future. For example, California law requires employers in the State to notify employees regarding any forthcoming inspection of employment records by federal immigration authorities, Cal. Lab. Code § 90.2(a), thus giving any undocumented employees an opportunity to leave before immigration authorities detect their presence.

## III. California's Tenth Amendment Claim Misconstrues the FY 2018 Custody and Interview Conditions

California's Tenth Amendment challenge to the INA provisions cited in the FY 2018 Byrne JAG conditions is necessarily without merit (as to all statutes other than 8 U.S.C. § 1373) because the challenged conditions only cite those statutes to illustrate the Federal Government's interest in requiring certain conduct by award recipients, and do not seek to require California or other grantees to comply with the statutes. *See* 8 U.S.C. §§ 1226, 1231, 1357, 1366. The State does not directly address this argument from defendants' motion, but asserts without elaboration

(and only as part of its *ultra vires* argument) that the challenged requirements "apply federal law to effectively impose mandatory obligations on state and local law enforcement officers." CA Mem. at 14 (internal quotation marks omitted). As shown in defendants' motion, that is incorrect. CA Dkt. No. 25 at 19-20. For example, the FY 2018 award documents note that the interview (access) and custody (notice) conditions are "[c]onsonant with" certain provisions of the INA, but they do not purport to require grantees to comply with those statutes. Defs' RJN, Ex. C ¶¶ 45, 46, Ex. D ¶¶ 45, 46.

Also, contrary to plaintiff's contentions, this case cannot properly be analogized to *Murphy v. NCAA*, 138 S. Ct. 1461 (2018). CA Mem. at 14. The statute at issue in *Murphy* – the Professional Amateur Sports Protection Act of 1992 ("PASPA") – made it "unlawful" for States to authorize any "betting, gambling, or wagering scheme based . . . on competitive sporting events." 138 S. Ct. at 1470. The Court found that PASPA was a clear effort to avoid accountability by requiring the States to regulate sports betting in the manner Congress wished. *See id.* at 1477. The Byrne JAG award requirements challenged here, in contrast, support a regulatory scheme – the identification and apprehension of criminal aliens – over which the Federal Government retains full responsibility and accountability for its actions. And because this is a grant program subject to Spending Clause limits, not Tenth Amendment limits, *Murphy* does not apply to these conditions.

**IV. Any Injunction Should Be Limited to the Plaintiffs**

Lastly, despite the pendency of similar litigation in several jurisdictions throughout the country, plaintiffs persist in seeking a "nationwide" injunction. *Los Angeles v. Whitaker*, No. 2:18-cv-07347-R-JC (C.D. Cal.); *Chicago v. Whitaker*, No. 1:18-cv-06859 (N.D. Ill.); *City of New York v. Whitaker*, No. 1:18-cv-06474-ER (S.D.N.Y.); *State of York v. Whitaker*, No. 1:18-cv-06474 (S.D.N.Y.); *City of Providence v. Whitaker*, No. CA-18-437-JJM-LDA (D.R.I.). Plaintiffs ignore the pendency of that litigation, and do not suggest how the courts should resolve the resulting conflict if courts in two or more of these actions were to issue contradictory nationwide injunctions. Obviously, the best approach – even aside from the jurisdictional and equitable problems with

ordering relief that affects parties not before the Court – is to avoid such a conflict by limiting any injunction in each case to the plaintiff. Indeed, the court in a similar case regarding the FY 2017 Byrne JAG conditions initially entered nationwide relief, *City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 951 (N.D. Ill. 2017), but the court of appeals, en banc, later vacated that aspect of the order. *City of Chicago v. Sessions*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018); *cf. California v. Azar*, 911 F.3d 558, 582-84 (9th Cir. 2018) (reversing nationwide preliminary injunction as abuse of discretion); *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1243-45 (9th Cir. 2018) (vacating and remanding nationwide injunction).

Plaintiffs also argue that a nationwide injunction – assuming there were no contrary ruling by another court – would benefit jurisdictions that oppose the FY 2018 requirements but "may not have the resources to litigate against DOJ." SF Mem. at 21; *see* CA Mem. at 25. But the failure of other potential challengers to bring litigation, for whatever reason, does not have a bearing on the appropriate scope of judicial relief. The reality of our legal system is that parties are generally expected to vindicate their own rights. Many potential litigants lack the financial resources (or the will) to pursue litigation, but that does not justify judicially legislating a nationwide outcome beyond the bounds of Article III.

**CONCLUSION**

Accordingly, for these reasons and for those stated in defendants' opening memorandum, the Court should dismiss plaintiffs' challenges to the public-disclosure condition in the FY 2018 Byrne JAG Program and the requirement to provide information regarding an applicant's laws and policies, or the Court should enter judgment for the defendants on those challenges.

Dated: January 16, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ALEX G. TSE
United States Attorney

JOHN R. TYLER
Assistant Director

/s/ W. Scott Simpson

W. SCOTT SIMPSON (Va. Bar #27487)

Department of Justice, Civil Division
318 South Sixth Street, Room 244
Springfield, Illinois 62701
Telephone: (202) 514-3495
Facsimile: (217) 492-4888
E-mail: scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

MATTHEW G. WHITAKER, Acting Attorney General of the United States; MATT M. DUMMERMUTH, Principal Deputy Assistant Attorney General; and U.S. DEPARTMENT OF JUSTICE